**HERBERT SMITH FREEHILLS
NEW YORK LLP**
Benjamin Rubinstein, Esq. (# 4227674)
Maxwell D. Herman, Esq. (# 5528571)
450 Lexington Avenue
New York, New York 10017
Telephone:  (917) 542-7600
Facsimile:  (917) 542-7601
benjamin.rubinstein@hsf.com
maxwell.herman@hsf.com


UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------------x
LOXLEY EVOLUTION TECHNOLOGY CO., LTD.,  :
                 :
          Plaintiff,  :   Index #
                 :
     v.           :   **COMPLAINT AND**
                 :   <u>**JURY DEMAND**</u>
HSS DEVELOPMENT GROUP LTD. and   :
HSS ADMINISTRATIVE SERVICES CO. INC.  :
                 :
         Defendants.  :
--------------------------------------------------------------------------------x

## **TABLE OF CONTENTS**

I.      PRELIMINARY STATEMENT .........................................................................................1

II.     THE PARTIES.............................................................................................................3

     A.      Plaintiff ..........................................................................................................3

     B.      Defendants ....................................................................................................3

III.    JURISDICTION AND VENUE ....................................................................................4

IV.     THE FACTS ...............................................................................................................4

     A.      Loxley Pursues Security Technology Equipment For A Client............................4

     B.      Loxley Contracts With HSS Development For Purchase And Delivery Of The Equipment.........................................................................................................5

     C.      Loxley Fully Performs Its Obligations Under The Agreement. ...........................6

     D.      HSS Development Fails To Perform Its Obligations Under The Agreement. ...........................................................................................................7

     E.      HSS Developments' Lies Unravel.........................................................................9

     F.      The Damage Done. ..........................................................................................10

V.      CAUSES OF ACTION ..............................................................................................10

     A.      Breach Of Contract. .......................................................................................10

     B.      Unjust Enrichment (In The Alternative To Breach Of Contract). ........................11

     C.      Negligent Misrepresentation..............................................................................12

VI.     DEMAND FOR RELIEF...........................................................................................14

Plaintiff Loxley Evolution Technology Co., Ltd. ("Plaintiff" or "Loxley"), by and through its counsel Herbert Smith Freehills New York LLP, brings this action against defendants HSS Development Group Ltd. and HSS Administrative Services Co. Inc. (together, "Defendants"), upon personal knowledge as to all facts regarding its own acts and upon information and belief as to all other matters, as follows:

## I.

## PRELIMINARY STATEMENT

1.      Loxley institutes this civil action to recover damages caused by Defendants' material breach of contract, and tortious and dishonest conduct.

2.      In September 2019, Loxley contracted with Defendants to obtain security technology equipment on behalf of a Thai government entity.

3.      In keeping with its obligations under the contract, Loxley paid for the equipment in full ($854,350.00) and provided Defendants with everything Defendants needed to apply for an export license and deliver the equipment to Loxley in Thailand by the March 2020 delivery deadline.

4.      In violation of the contract, Defendants failed to deliver the equipment to Loxley by March 2020.  Defendants attributed the breach to delays in processing the export license application at the U.S. State Department resulting from the COVID-19 pandemic – despite that the federal government had not recognized the pandemic until March 11, 2020, just seven days before Defendants' deadline for performance.

5.      Thereafter, in order to avoid Loxley terminating the contract for material breach and demanding the return of Loxley's funds paid in advance, Defendants assured Loxley that issuance of an export license was a *fait accompli*, but that there would be continuing delays at the U.S. State Department as a result of the pandemic.  Each time Loxley asked for a status update, Defendants reassured Loxley of these two points, for months.

1

6.      Loxley reasonably believed based upon Defendants' representations that once COVID-19-related delays at the U.S. State Department were resolved, the export license would be issued and the equipment would be delivered to Loxley.

7.      In reliance on Defendants' assurances, Loxley deferred terminating the Agreement for material breach and deferred demanding the return of its funds paid in advance (as Defendants intended).  It also held off on sourcing the equipment from another vendor, which, if Defendants' assurances were accurate, would take even longer to deliver the equipment than waiting for the U.S. State Department to issue the export license to Defendants.

8.      Delays were of particular concern to Loxley because, as Defendants knew, Loxley had an obligation to deliver the Equipment to the client by September 21, 2020, and for each day of delay thereafter, a significant fine would be incurred.  Nevertheless, on September 2, 2020, Defendants' Chief Executive Officer Ben Jamil assured Loxley that an export license would be issued in 150 days, "once our government's operations stabilize."  So Loxley continued to wait.

9.      On October 27, 2020, Loxley learned the truth.  Defendants admitted that the U.S. State Department had denied their export license application, contrary to Defendants' guarantees that the export license would be issued.  Defendants claimed they learned of the denial that day.

10.     When Loxley reviewed the denial letter, however, it found that the export license denial had been issued on August 27, 2020.  When confronted, Defendants conceded that they had known about the denial as of September 1, 2020 – one day before CEO Jamil's September 2 letter to Loxley representing that it was Defendants' "best guess" that the U.S. State Department would issue the license in 150 days' time.

11.      Realizing they had been deceived, Loxley demanded that Defendants return Loxley's funds.  Loxley also began sourcing a new vendor as quickly as possible.  However, due to the regulated nature of the equipment, Loxley was unable to purchase alternate goods until May 2021 at a 40% premium.  The equipment has yet to be delivered to Loxley, and the daily fines, which began on September 21, 2020, continue to accrue.

2

12.     On March 18, 2021, exactly one year from the date of the breach, CEO Jamil expressly refused ever to return Loxley's funds.

13.     Loxley files this lawsuit to recover damages, including (a) the funds paid in advance to Defendants, (b) the daily fines that have accrued and continue to accrue as a result of Loxley's reliance upon Defendants' false representations, (c) the premium paid by Loxley to purchase alternate equipment, and (d) punitive damages to punish Defendants for their deceptive conduct and deter future similar conduct.

## II.

## THE PARTIES

### A.     Plaintiff

14.     Loxley is a private corporation organized and existing under the laws of Thailand with its principal place of business in Bangkok, Thailand.  Loxley provides system integration services to its clients, primarily involving security technology systems, network systems, application development, site preparation, and maintenance services.  For two decades, Loxley has worked to supply major corporate and government partners with their security technology needs. Loxley is a wholly-owned subsidiary of Loxley Public Company Limited, a public company listed on the Thai Stock Exchange, which has been an international supplier of goods for nearly a century.

### B.     Defendants

15.     HSS Development is a private corporation organized under the laws of Delaware in 2017 with its principal place of business at 75 South Broadway, White Plains, New York.  HSS Development purports to sell and service security technology through its website www.secintel.com.

16.     HSS Administrative is a private corporation organized under the laws of New York in 2017 with its principal place of business also at 75 South Broadway, White Plains, New York. HSS Administrative is a wholly-owned subsidiary of HSS Development and exists to hold cash

funds received by HSS Development.  HSS Development and HSS Administrative are successors in interest to Homeland Security Strategies, Inc.

17.     Current non-party Ben Jamil is the controlling shareholder and Chief Executive Officer of both HSS Development and HSS Administrative, and former controlling shareholder and Chief Executive Officer of Homeland Security Strategies, Inc.

## III.

## JURISDICTION AND VENUE

18.     This Court has jurisdiction over the action pursuant to 28 U.S.C. § 1332 because there is diversity of citizenship between the parties and the amount in controversy exceeds $75,000, excluding interest and costs.

19.     This Court has jurisdiction over the parties because Defendants are residents of the State of New York and continuously and systematically conduct business within the State of New York.

20.     Venue is proper in this Court pursuant 28 U.S.C. § 1391 because Defendants are residents of the forum and a substantial part of the events giving rise to the claims in this case occurred within the forum.

## IV.

## THE FACTS

### A.     Loxley Pursues Security Technology Equipment For A Client.

21.     Loxley is an established provider of system integration services to corporate and government clients in Thailand and abroad.  It sources security technology from a variety of suppliers and manufacturers located around the world.

22.     In 2019, Loxley began sourcing a high capacity receiver system capable of intercepting cellular signals and ancillary related devices (the "Equipment"), and training for the Equipment, for a government entity in Thailand ("Client").

23.     In or before June 2019, Loxley located the Equipment listed for sale on the website www.secintel.com and contacted the operator of the website about purchasing the Equipment. www.secintel.com is a website owned and operated by HSS Development.

24.     Loxley explained to HSS Development that it was procuring the Equipment for Client with a deadline of May 24, 2020, and that a fine would be incurred for each day of delay thereafter.  Chief Executive Officer Ben Jamil and Executive Director Christopher Decker assured Loxley that the Equipment would be manufactured, licensed and delivered within three months of receipt of a down payment.

**B.     Loxley Contracts With HSS Development For Purchase And Delivery Of The Equipment.**

25.     On June 13, 2019, HSS Development presented Loxley with a proposal and invoice for the purchase of the Equipment (a "CC5000 Passive Collection System" and additional receiver) and five days of training on the Equipment for Client.

26.     On September 20, 2019, Loxley accepted the proposal.

27.     Pursuant to the terms of the accepted proposal and invoice (together, the "Agreement")[1], Loxley agreed to pay $835,650.00 for the Equipment, $15,000.00 for training and $3,600.00 for shipping.

28.     Loxley agreed to pay in two installments:  A down payment of 75% ($640,687.50) following execution of the Agreement, and payment of the balance ($213,562.50) "prior to delivery."

29.     Pursuant to the Agreement, "[d]elivery time [wa]s 3 months after receipt of down payment, unless indicated differently."  The Agreement does not indicate differently.

30.     HSS Development represented in the Agreement that it would be "be responsible for the production and delivery of the [Equipment]" and accepted the risk of obtaining an export license, if necessary, representing that: "sale and implementation of the products offered in this

---

[1] Loxley has not attached the Agreement to this complaint because HSS Development designated "[t]he information furnished in [the Agreement]" as proprietary and confidential.

5

proposal may be subject to and dependent on receiving an export license by HSS and an import license by the Customer . . . ."

31.    Under U.S. Federal International Traffic in Arms Regulations, HSS Development was required to obtain an export license in order to deliver the Equipment to Loxley in Thailand.

32.    HSS Development was aware that it had to obtain an export license before contracting with Loxley.

33.    The Agreement directed Loxley to make all payments by wire transfer to TD Bank for the account of HSS Administrative, HSS Development's wholly-owned subsidiary.

34.    HSS Administrative has the same officers, employees and office address as HSS Development, and is controlled by HSS Development.  Ben Jamil is Chief Executive Officer of both companies.

C.    **Loxley Fully Performs Its Obligations Under The Agreement.**

35.    On October 18, 2019, Loxley wired a 75% down payment of $640,687.50 to HSS Administrative.

36.    On December 18, 2019, Loxley delivered to HSS Development an executed 'end-user certificate,' which HSS Development needed in order to apply for an export license.

37.    As of December 18, 2019, Loxley had fully performed all of the conditions precedent to HSS Development beginning performance and had provided HSS Development with all of the documentation necessary for HSS Development to apply for an export license. Accordingly, HSS Development's performance was required by the Agreement to be completed within three (3) months – no later than March 18, 2020.

38.    On February 27, 2020, with the delivery deadline nearing, Loxley obtained an import license for the Equipment, and HSS Development sent Loxley a final invoice requesting payment in full as a condition of imminent delivery.

39.    Loxley promptly wired $213,562.50 to HSS Administrative on March 5, 2020.

40.     As of March 5, 2020, Loxley had fully performed all of its obligations under the Agreement.

**D.    HSS Development Fails To Perform Its Obligations Under The Agreement.**

41.     On March 12, 2020, Loxley reached out via email to Executive Director Decker to confirm the delivery date.  Executive Director Decker responded later that day, acknowledging receipt of final payment and stating that the Equipment would be delivered soon.

42.     However, HSS development failed to deliver the Equipment by March 18, 2020. HSS Development's failure to deliver by the deadline was a material breach of the Agreement.

43.     Loxley sent an email to HSS Development requesting an update that day.

44.     On March 19, 2020, Executive Director Decker responded to Loxley by email, admitting that HSS Development had yet to obtain an export license.  Executive Director Decker attributed the breach to delays at the U.S. State Department occasioned by COVID-19 – despite that HSS Development had been able to submit an export license application as of December 18, 2019, nearly three months before the U.S. Federal Government first declared COVID-19 a pandemic on March 11, 2020.

45.     In 2018, the most recent year for which we have data, the average export license application processing time was 34 days.  *See* Defense Trade Controls Licensing (DTCL), U.S. Department of State Official Website, https://www.pmddtc.state.gov/ddtc_public.

46.     Executive Director Decker claimed delays at the U.S. State Department required 30-60 more days to obtain an export license, or more, but assured Loxley that the license would be issued.

47.     Without excusing the breach or granting HSS Development an extension of its already-expired time to perform, Loxley abstained from terminating the Agreement in reliance on the representations by Executive Director Decker that the State Department would issue an export license and that Loxley would receive the Equipment.

48.     Loxley also obtained an extension of its time to deliver the Equipment to Client to September 21, 2020.

49.     A month later, on April 27, 2020, CEO Ben Jamil sent a letter to Loxley assuring them that an export license would be issued, but would require an "additional 60 to 90 days or longer" to process on account of COVID-19.

50.     On July 14, 2020, under increasing pressure to procure the Equipment, Loxley requested a status update.  Executive Director Decker responded that the export license "is supposed to be finalized this week.  Will let you know the moment that happens."

51.     On July 29, 2020, Loxley requested another status update.  Executive Director Decker responded that the export license was "Still in progress but only 1 last department to sign off."

52.     On September 2, 2020, CEO Jamil sent Loxley a letter representing that "the application for export license is still in progress.  The cause of the delay is COVID-19 and the displacement of U.S. government employees. . . .  Our advisors believe that once our government's operations stabilize and return to normal, we will be able to accurately predict the date of when the export license will be issued, however, our best guess under the current circumstance is around another 150 days from now."

53.     HSS Development and its representatives had no basis for repeatedly representing to Loxley that the U.S. State Department *would* issue an export license, or when it would issue the license.  On information and belief, HSS Development made these misrepresentations in order to delay Loxley from terminating the Agreement for failure to timely deliver the Equipment and to retain Loxley's money paid in full in March 2020, which HSS Development and CEO Jamil had long ago spent for their own benefit.

54.     Worse, Loxley would come to learn that when CEO Jamil represented on September 2, 2020 that the export license *would* be issued in, by his "best guess," "around another 150 days," CEO Jamil already knew the export license had been denied on August 27, 2020.

55.     In reliance upon HSS Development's knowingly false assurances that the export license would eventually be issued, Loxley continued to wait for delivery and did not source another vendor for the Equipment, which it reasonably believed would take more time and would be more costly than waiting for the U.S. State Department to issue a license for Equipment which Loxley had already paid for in full.

**E.     HSS Developments' Lies Unravel.**

56.     On October 27, 2020, Loxley received an email from CEO Jamil admitting that the export license application had been denied: "I have just obtained a copy of the 'denial' by the authorities.  Please show it to the appropriate persons at the US Embassy and see if they can be of any help.  Good luck and keep us posted."

57.     CEO Jamil attached the State Department's denial letter to the email.  The State Department denied the export license application because "[t]he proposed export is not consistent with current US foreign policy objectives."

58.     The denial letter was dated August 27, 2020.

59.     Loxley later came to learn that, contrary to CEO Jamil's email, HSS Development and CEO Jamil had known about the denial of the export license application no later than September 1, 2020, when HSS Development had contacted the State Department to discuss the denial.

60.     Nevertheless, HSS Development, through CEO Jamil, had taken advantage of a pandemic and perpetrated the knowingly false narrative that Defendants were waiting on a license that "[would] be issued" "once [the U.S.] government's operations stabilize" in order to retain the funds paid by Loxley, despite knowledge that Loxley had been contractually obligated to deliver the Equipment to Client by September 21, 2020, and a daily fine had started to accrue on that date.

61.     To the extent that HSS Development's performance under the Agreement was ever extended due to unforeseen delays at the State Department resulting from the COVID-19 pandemic beginning March 11, 2020 (though it should not have been extended because HSS Development

had nearly three months to obtain an export license prior to the pandemic declaration), that period of suspension unquestionably ended when the U.S. State Department rendered its decision denying the export license application on August 27, 2020.

**F.      The Damage Done.**

62.      Realizing that Defendants had deceived Loxley for nearly a year and that a U.S. export license was not going to be issued, Loxley demanded that the breaching parties return the $854,250.00 paid by Loxley.

63.      At significant cost, Loxley also scrambled to identify another vendor for the Equipment, perform its due diligence, present the alternative to Client and, once accepted, purchase the Equipment.

64.      Loxley was unable to source Equipment from another vendor until May 2021, and only at a premium over the price it paid to Loxley of $340,403.50.

65.      Loxley has yet to receive the Equipment from the other vendor and deliver it to Client, and a daily fine of 0.2% of the value of the uncompleted contract continues to accrue.

66.      On March 18, 2021, exactly one year from the breach, CEO Jamil expressly refused to ever refund to Loxley the $854,250.00 it paid in advance.

67.      On April 23, 2021, Loxley gave HSS Development and HSS Administrative a final opportunity to refund Loxley by May 14, 2021, noting that otherwise it would be forced to file a lawsuit.

68.      A refund was not issued.  Loxley instituted this lawsuit promptly thereafter.

**V.**

**CAUSES OF ACTION**

**A.      First Cause Of Action: Breach Of Contract.**

69.      Loxley repeats and re-alleges the allegations set forth in the previous paragraphs as if fully set forth herein.

70.     On September 20, 2019, Loxley contracted to purchase the Equipment from HSS Development for $854,250.00.

71.     Loxley duly performed all of its obligations under the Agreement, including advance payment in the amount of $854,250.00.

72.     HSS Development failed to perform its obligations under the Agreement as of the deadline of March 18, 2020.

73.     Despite notice of the material breach, HSS Development has refused to refund to Loxley its advance payment.

74.     As a direct and proximate result of HSS Development's breach of the Agreement, Loxley has sustained damages in an amount to be determined at trial, but in any event, no less than $854,250.00, plus interest.

**B.**     **Second Cause Of Action: Unjust Enrichment (In The Alternative To Breach Of Contract).**

75.     Loxley repeats and re-alleges the allegations set forth in the previous paragraphs as if fully set forth herein.

76.     To the extent the Court determines that the Agreement failed or is otherwise void for failure of a contingency, or impossibility of performance, relating to the denial of the export license, HSS Development and HSS Administrative have been unjustly enriched by the retention of Loxley's advance payment.

77.     Defendants accepted Loxley's advance payment of $854,250.00 as of March 5, 2020.

78.     Loxley reasonably expected that in return for the advance payment, Defendants would deliver the Equipment to its offices in Thailand.

79.     On August 27, 2020, the U.S. State Department denied an export license for the Equipment.  The Equipment cannot be exported to Thailand without an export license pursuant to Federal Law.

11

80.    Despite Loxley's demands, Defendants have not returned Loxley's advance payment paid in full on March 5, 2020.

81.    Retention by Defendants of the advance payment would unjustly enrich Defendants at the expense of Loxley, which has received nothing of value for its payment.

82.    As a direct and proximate result of the foregoing, Defendants have been unjustly enriched at the expense of Loxley in an amount to be determined at trial, but in any event, no less than $854,250.00, plus interest.

**C.    Third Cause Of Action: Negligent Misrepresentation.**

83.    Loxley repeats and re-alleges the allegations set forth in the previous paragraphs as if fully set forth herein.

84.    On March 19, 2020, April 27, 2020, July 14, 2020 and July 28, 2020, HSS Development, through its CEO and Executive Director, repeatedly represented to Loxley that issuance of an export license was a *fait accompli*, but was delayed due to the COVID-19 pandemic.

85.    On September 2, 2020, HSS Development represented to Loxley:  "Our advisors believe that once our government's operations stabilize and return to normal, we will be able to accurately predict the date of when the export license will be issued, however, our best guess under the current circumstance is around another 150 days from now."

86.    HSS Development had no reasonable basis upon which to represent to Loxley that the export license would be issued, rather than denied, and, as of September 1, 2020, HSS Development knew that the export license had been denied.

87.    HSS Development intended for Loxley to rely upon its knowingly false representations in order to use Loxley's funds for its own benefit and the benefit of its officers and directors, despite knowledge that Loxley was contractually obligated to deliver the Equipment to Client by September 21, 2020, and that a daily fine would begin accruing on that date.

88.    HSS Development's conduct evinces a high degree of moral turpitude and demonstrates such wonton dishonesty as to imply a depraved indifference to civil obligations.

89.     In reasonable reliance upon the false representations made by HSS Development, Loxley delayed sourcing and purchasing the Equipment from another vendor.

90.     When Loxley learned that HSS Development's representations were false, Loxley took steps to source the Equipment from another vendor as quickly as possible in order to complete performance and stop the accrual of fines.  Loxley was forced to pay a premium to the new vendor of $340,403.50 for the Equipment.

91.     Loxley has yet to receive the Equipment from the new vendor and the fine of 0.2% of the value of the uncompleted portion of the contract with Client continues to accrue.  At the uncompleted contract value of 56,230,000 THB, the fine as of the date of the filing of this complaint is $ 941,043.27.[2]  The fine will continue to accrue until the Equipment is delivered to Client.

92.     As a direct and proximate result of HSS Development's false representations, Loxley has sustained damages in an amount to be determined at trial, but in any event, no less than $1,281,446.77, plus interest.

---

[2] 56,230,000 THB*.2%*261 days*the current THB:USD exchange rate of 1:0.0321.

## VI.

## **DEMAND FOR RELIEF**

93.     WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment in favor of Plaintiff and against Defendants on each and every claim, and award Plaintiff the following relief:

    a)  Damages in an amount to be proven at trial, but no less than $2,135,696.77.

    b)  Punitive damages in an amount sufficient to punish Defendants and deter future similar conduct.

    c)  Statutory pre-judgment interest running from the date of the breach and statutory post-judgment interest running from the date of judgment; and,

    d)  Such other and further relief as this Court deems just and proper.

Dated: June 9, 2021
      New York, NY

                               Respectfully submitted,

                               */s/ Benjamin Rubinstein*
                               Benjamin Rubinstein, Esq.
                               **HERBERT SMITH FREEHILLS**
                               **NEW YORK LLP**
                               450 Lexington Avenue
                               New York, New York 10017
                               (917) 542-7600
                               benjamin.rubinstein@hsf.com

                               *Attorneys For Plaintiff*